GALLUS LAW
Chris J. Gallus
1423 Otter Road
Helena, MT  5962-7641
Phone:  406.459.8676
Fax:  406.443.0262
Chrisjgalluslaw@gmail.com

IMPG ADVOCATES, INC.
Paul A. Rossi
316 Hill Street
Mountville, PA  17554
717.961.8978
Paul-Rossi@comcast.net

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| **NATHAN PIERCE; MONTANA COALITION FOR RIGHTS; MONTANANS FOR CITIZEN VOTING; LIBERTY INITIATIVE FUND; and SHERRI FERRELL** | : |
| | : **CIVIL ACTION** |
| **Plaintiffs,** | : |
| | : **6:18-cv-00063-CCL** |
| **v.** | : **Judge Charles C. Lovell** |
| | : |
| **COREY STAPLETON, in his official capacity as the Secretary of State for the State of Montana; AND, TIM FOX, in his official as the Attorney General of Montana,** | : **PLAINTIFFS'** |
| | : **MEMORANDUM** |
| | : **IN SUPPORT OF** |
| | : **OF PLAINTIFFS'** |
| | : **MOTION FOR** |
| | : **SUMMARY JUDGMENT** |
| | : |
| **Defendants.** | : *Filed Electronically* |

1

## **TABLE OF CONTENTS**

Table of Contents……………………………………………………...…2

Table of Authorities…………………………………………………...………4

I.      Introduction & Summary of the Argument………………...……...………7

II.     Argument………………………..……………………………………10

        A.      Legal Standard………………………………………………......10

        B.      First Amendment Standard of Review……………………………....10

        C.      Montana's Prohibition on Non-Montana Residents Circulating
                Initiative Petitions Violates Rights Guaranteed to Plaintiffs'
                Under the First and Fourteenth Amendments to the United States
                Constitution (Counts I & II)………………………………………11

                1.      Strict Scrutiny Analysis Applies to Review of Montana's
                        Residency Requirement to Circulate Initiative and
                        Referendum Petitions………………………………………....11

                2.      Evidence Supports Strict Scrutiny Analysis…………………15

                3.      Montana's Residency Requirement for Initiative and
                        Referendum Petition Circulators is Not Narrowly
                        Tailored to Advance a Compelling Governmental
                        Interest……………………………………………………….…18

        D.      Montana's Prohibition on Compensating Circulators of
                Initiative Petitions Based on the Number of Signatures Collected
                Violates Rights Guaranteed to Plaintiffs' Under the First and
                Fourteenth Amendments to the United States Constitution
                (Counts III & IV)…………………………………………………...…21

                1.      Strict Scrutiny Analysis Applies to Review of Montana's
                        Pay Per Signature Ban for Initiative and Referendum
                        Petitions…………………………………………………………21

2.    Evidence Supports Strict Scrutiny Analysis………………....24

3.    Montana's Pay Per Signature Ban for Initiative and Referendum Petition Circulators is Not Narrowly Tailored to Advance a Compelling Governmental Interest……………………………………………....28

III.    Conclusion………………………………………………………29

Certificate of Service…………………………………………………...30

Certificate of Compliance Pursuant to L.R. 7.1(d)(2)(E)…………………………31

Certification of Non-Concurrence……………………………………...…31

# TABLE OF AUTHORITIES

## Cases

*Buckley v. Am. Const. Law. Found.*,
    525 U.S. 182 (1999)……………………………………………...…*passim*

*Burdick v. Takushi*,
    504 U.S. 428 (1992)…………………………………………………..18

*Campbell v. Buckley*,
    203 F.3d 738 (10th Cir. 2000)…………………………………………21

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)………………………………………………...…10

*Citizens for Tax Reform v. Deters*,
    518 F.3d 375 (6th Cir 2008)……………………………..…………7, 27

*Citizens in Charge v. Gale*,
    810 F.Supp.2d 916 (D.Neb. 2011)…………………………..……....13, 20

*Daien v. Ysursa*,
    711 F.Supp.2d 1215 (D. Idaho 2010)……………………………...….13

*FEC v. Wisc. Right to Life*,
    551 U.S. 449 (2007)…………………………………….…….…..10, 18

*Green Party of Pensylvania v. Aichele*,
    89 F.Supp.3d 723 (E.D. Pa. 2015)…………………….…..……….14, 20

*Independence Inst. v. Buescher*,
    718 F.Supp.2d 1257 (D. Colo. 2010)……………………………..…..21

*Independence Inst. v. Gessler*,
    936 F.Supp. 2d (D. Colo. 2013)………………….………………….26, 27

*Krislov v. Rednour*,
    226 F.3d 851 (7th Cir. 2000)…………………………………………..13

*Libertarian Party of Connecticut v. Merrill*,
  2016 WL 10405920 (D. Conn., Jan. 26, 2016)…………………………….14

*Libertarian Party of Virginia v. Judd*,
  718 F.3d 308 (4th Cir. 2013)……………………………..………13, 19, 20

*LIMIT v. Maleng*,
  874 F.Supp. 1138 (W.D. Wash. 1994)…………………..…………..23, 27

*Meyer v. Grant*,
  486 U.S. 414 (1988)……………………………………..…………*passim*

*National Association for Gun Rights, Inc. v. Mangan*,
  No. 18-35010 (9th Cir. Aug. 12, 2019)…………………………..……15

*Nader v. Blackwell*,
  545 F.3d 459 (6th Cir. 2008)……………………………….……………13

*Nader v. Brewer*,
  531 F.3d 1028 (9th Cir. 2008)……………………….………..……14, 14, 19

*On Our Terms '97 PAC v. Secretary of State of Maine*,
  101 F.Supp.2d 19 (D. Maine 1999)…………………………………...27

*Prete v. Bradbury*,
  438 F.3d 949 (9th Cir. 2006)……………………………………….…24

*Quincy Cable TV, Inc. v. FCC*,
  768 F.2d 1434 (1985)…………………………………………….....19

*Term Limits Leadership Council v.. Clark*,
  984 F.Supp. 470 (S.D. Miss. 1997)…………………………………...27

*Timmons v. Twin Cities Area New Party*,
  520 U.S. 351 (1997)……………………………………...…...…10

*Turner Broad. Sys., Inc. v. FCC*,
  512 U.S. 622 (1994)……………………………………………19

*Wilmoth v Merrill*,

2016 WL 829866 (D. Conn. March 1, 2016)……………………………....14

*Yes on Term Limits v. Savage*,
550 F.3d 1023 (10th Cir. 2008)…………………………………………20, 27

## <u>Statutes and Rules</u>

Fed.R.Civ.P 56(c),……………………………………………………………...10

Mont. Code Ann. §13-27-102(2)(a)…………………………………………11

Mont. Code Ann. §13-27-102(2)(b)……………………………………...…..21

## I.     <u>INTRODUCTION & SUMMARY OF THE ARGUMENT</u>

In affirming the district court's holding that Ohio's pay per signature compensation ban was unconstitutional, Sixth Circuit Judge McKeague appropriately opened the court's opinion with a lyrical reminder of the apex position enjoyed by the First Amendment in the pantheon of rights and responsibilities enjoyed by citizens of this county:

> As with the law in general, the First Amendment is a jealous mistress. It enables the people to exchange ideas (popular and unpopular alike), to assemble with the hope of changing minds, and to alter or preserve how we govern ourselves.  But in return, it demands that sometimes seemingly reasonable measures enacted by our governments give way.

*Citizens for Tax Reform v. Deters*, 518 F.3d 375, 377 (6th Cir. 2008).

In evaluating in-state residency requirements and pay per signature compensation bans for initiative and referendum petition circulators, courts have nearly unanimously and unflinchingly set aside state laws which may locally appeal to the chauvinistic attitudes of some state populations in residency requirements and legislative animus directed at initiative and referendum proponents who directly challenge their own primacy over the power to impose law and therefore seek to throw up any and all impediments to economically punish petition circulators so that they are forced to seek greener pastures in states with more level-headed lawmakers.  The First Amendment and the principles for which it stand is simply more important than the sensibilities of state chauvinism

and legislative power brokers who uniquely target initiative and referendum petition circulators with economic punishment, while at the same time reserving unto themselves the right to employ the same petition circulators for their own potential petition drives free from the restrictions placed on initiative and referendum petitions.

Plaintiffs invite this court to join the overwhelming majority of courts that have struck down these offensive enactments against free speech and association. In support, Plaintiffs have developed an undisputed factual record nearly identical to the evidentiary records relied upon by federal district and circuit courts of appeal to hold in-state residency requirements and pay per signature bans unconstitutional. The evidence in this action clearly demonstrate that the residency requirement (directly) and the pay per signature compensation ban (indirectly, through economic penalty) reduces the pool of available trained circulators thereby both reducing the likelihood that proponents will be able to gather the number of signatures required for ballot access and the size of the audience proponents can reach, all while increasing the costs of initiative and referendum petition drives through the exclusion of trained petition circulators who are best able to most efficiently convey proponents message to the voters.

The record established by Plaintiffs is especially potent in Montana where there is low unemployment, relatively high wages and a tiny petition industry that

leverages its monopoly to charge initiative proponents rates 20 to 25% higher than what out-of-state petition firms are willing to charge, and where one of those firms, M+R, admits to limiting their services to initiative proponents who purchase their more expensive package of services through the entire election campaign and limit even those services to initiative proponents advancing a "progressive" political agenda – conservatives need not apply.  *See*, Pl. Exhibit L at pp. 2-3.

The evidence shows that strict scrutiny applies to the review of both the residency requirement and the pay per signature compensation ban for initiative and referendum petition circulators.  In contrast, Defendants offer no evidence that the challenged provisions are necessary and narrowly drawn to prevent petition fraud.  The mere fact that an instance of petition fraud occurred in Montana 13 years ago is insufficient to constitutionally justify blanket restrictions on speech where no evidence has been adduced by Defendants to show that those restriction remedy the purported evil and are narrowly drawn.

Accordingly, Plaintiffs' motion for summary judgment as to Counts I, II, III, & IV of Plaintiffs' Amended Complaint in the above captioned action should be granted.

## II.   **ARGUMENT**

### A.   **Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)).

### B.   **First Amendment Standard of Review**

State regulation of petition circulation is reviewed under the following framework:

> When deciding whether a state election law violates First and Fourteenth Amendment associational rights, we weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary.  Regulations imposing severe burdens on Plaintiffs' rights must be narrowly tailored and advance a compelling state interest.  Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.  No bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms.

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358-59 (1997)(internal quotation marks and citations omitted).  Where strict scrutiny applies, Defendants' burden is "formidable."  *FEC v. Wisc. Right to Life*, 551 U.S. 449, 127 S.Ct. 2652, 2664 (2007).

The United States Supreme Court has applied strict scrutiny analysis to both state residency requirements and payment bans in the circulation of ballot initiative petitions, where, as here, a law imposes substantial or severe burdens on petition circulation. *See*, *Buckley v. Am. Const. Law Found.*, 525 U.S. 182, 192 n.12 (1999)(identifying "now settled approach" that state regulations imposing severe burdens on speech are subject to strict scrutiny); *Meyer v. Grant*, 486 U.S. 414, 420, 425 (1988)(while using the phrase "exacting scrutiny," the Court's application of strict scrutiny is evident in the statement that Colorado's burden to justify the pay ban was "well-nigh insurmountable").

    **C.**    **Montana's Prohibition on Non-Montana Residents Circulating Initiative Petitions Violates Rights Guaranteed to Plaintiffs' Under the First and Fourteenth Amendments to the United States Constitution (Counts I & II)**

        1.    Strict Scrutiny Analysis Applies to Review of Montana's Residency Requirement to Circulate Initiative and Referendum Petitions.

Mont. Code Ann. §13-27-102(2)(a) requires that initiative and referendum petitions may only be circulated by Montana residents. Mont. Code Ann. §13-27-102(2)(a).

There now exists wide consensus among federal district and circuit courts of appeal that in-state residency requirements for the circulation of initiative, referendum and candidate petitions are unconstitutional. Restrictions which decrease the number of available message carriers imposes a severe restriction on

11

"core" First Amendment speech and such restrictions are subject to strict scrutiny analysis and can only survive if the state demonstrates that the residency requirement is narrowly tailored to advance a compelling governmental interest. Every court to have considered this issue – including the Ninth Circuit – has held that the state's only legitimate interest in making sure that circulators are available for any investigation and/or prosecution of allegations of petition fraud are more narrowly advanced by requiring the out-of-state circulator to consent to the state's jurisdiction as a condition precedent to being allowed to circulate petitions in their state.

In evaluating ballot access cases, courts must "be vigilant . . . to guard against undue hindrances to political conversations and the exchange of ideas." *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 192 (1999). The Supreme Court has twice considered statutes that restrict who may circulate election petitions in support of ballot access, and has twice invalidated the restriction.   In *Meyer v. Grant*, 486 U.S. 414 (1988), the Court struck down Colorado's prohibition on paid petition circulators.  Holding that the restriction was "a limitation on political expression subject to exacting scrutiny" the Court reasoned that the state had failed to justify the burden on advocates' free speech rights.  *Meyer*, 486 U.S. at 420.  In *Buckley*, the Court invalidated a requirement that petition circulators be registered voters of the state, holding that the

"requirement cuts down the number of message carriers in the ballot-access arena without impelling cause." *Buckley*, 525 U.S. at 197.

Although *Buckley* expressly reserved the question of whether residency requirements like the one at issue in this action would be unconstitutional, *Buckley*, 525 U.S. at 197, every federal court to address in-state circulator restriction, where the circulators are willing to place themselves under the jurisdiction of the state in which they want to circulate election petitions has expressly relied on *Buckley* and *Meyer* to hold such requirements unconstitutional in the context of both ballot initiative and candidacy petitions. *See Citizens in Charge v. Gale*, 810 F.Supp.2d 916 (D. Neb. 2011) (invalidating state residency requirement for circulators of candidacy and ballot initiative petitions); *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008) (invalidating state residency requirement for circulators of presidential candidacy petitions); *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008) (same); *Daien v. Ysursa*, 711 F.Supp.2d 1215 (D. Idaho 2010) (same); *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000) (invalidating residency requirement for circulators of petition for congressional candidacy petitions); *Libertarian Party of Virginia v. Judd*, 718 F.3d 308 (4th Cir. 2013) (invalidating state residency requirement for circulators of candidacy petitions).

The modern trend continues, in 2015, Judge Dalzell of the United States District Court for the Eastern District of Pennsylvania preliminarily and

permanently enjoined enforcement of the in-state witness restriction imposed upon the circulation of nomination papers pursuant to 25 P.S. 2911(d), as applied to candidates for the Green and Libertarian parties of Pennsylvania. *Green Party of Pennsylvania v. Aichele*, 89 F.Supp3d 723 (E.D. Pa. 2015). Judge Hall of the United States District Court for the District of Connecticut enjoined the in-state witness restriction on the circulation of nomination petitions for candidates for both major and minor political parties. *Wilmoth v. Merrill*, 2016 WL 829866 (D. Conn., March 1, 2016); *Libertarian Party of Connecticut v. Merrill*, 2016 WL 10405920 (D. Conn., January 26, 2016). Last year, the Third Circuit reversed and remanded dismissal of a complaint challenging the constitutionality of New Jersey's in-state witness restriction for major political party candidates instructing the district court to apply strict scrutiny analysis.

In *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008), the United States Court of Appeals for the Ninth Circuit reviewed an Arizona requirement that circulators of candidate nominating petitions be residents of Arizona. *Id*. at 1036. The Ninth Circuit concluded that that strict scrutiny analysis of Arizona's residency requirement was compelled by the Supreme Court's decision in *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 194-95 (1999). As *Nader* noted, "[t]he Court held in *Buckley* significantly reducing the number the number of potential circulators imposed a severe burden on rights of political expression."

*Nader*, 531 F.3d at 1036.  Extending the rational from *Buckley* that laws severely burdening speech must be subject to strict scrutiny review, the Ninth Circuit in *Nader* properly concluded that the Arizona residency requirement was subject to strict scrutiny because it "exclude[d] from eligibility all persons who support the candidate but who…live outside the state of Arizona.  *Id.*

Also using the rational of *Nader*, the Ninth Circuit recently invalidated Montana's registered-voter requirement that a political committee's designated treasurer be a registered Montana voter, a claim that Plaintiffs advanced in this action as part of their Amended Complaint, which the Ninth Circuit deemed "significantly less burdensome than the requirements at issue in *Buckley* and *Nader*" and invalidated under the less stringent exacting scrutiny.  *See*, *National Association for Gun Rights, Inc. (NAGR). v. Mangan, et al.*, No.  18-35010, slip op. at pp. 33-34 (9th Cir. Aug. 12, 2019) .  The Court in NAGR explained that:

> The particular First Amendment harm that restrictions on petition circulators pose is that they "limit the number of voices who will convey the initiative proponents' message and, consequently, cut down the size of the audience proponents can reach."  *Buckley*, 525 U.S. at 194-95

*NAGR*, slip op. at p. 33.

### 2.   Evidence Supports Strict Scrutiny Analysis

The record support the obvious fact that a law which prevents otherwise willing out-of-state professional circulators to circulate initiative and referendum

petitions in Montana necessarily reduces the pool of circulators available to initiative and referendum proponents in Montana. Literally, over 325,000,000 American citizens are prohibited from freely circulating initiative and referendum petitions in Montana. The math, alone, triggers strict scrutiny analysis.

However, additional evidence supports this necessary legal conclusion as well. Montana's residency requirement to circulate initiative and referendum petitions: (1) makes it less likely that the proponents will gather the number of signatures required to secure ballot access. Pl. Undisputed Statement of Facts at ¶128; (2) reduces the pool of available circulators available to initiative and referendum proponents to circulate their petitions to secure ballot access. Pl. Undisputed Statement of Facts at ¶129; (3) eliminates the persons who are best able to convey proponents' message. Pl. Undisputed Statement of Facts at ¶130; (4) reduces the size of the audience proponents can reach. Pl. Undisputed Statement of Facts at ¶131; and, (5) increases the overall cost of signature gathering. Pl. Undisputed Statement of Facts at ¶131; Pl. Exhibits J & K.

Excluding 325,000,000 American citizens from participating in circulating Montana initiative and referendum petitions necessarily reduces the pool of available professional circulators where professional circulators are spread across the county as part of an interstate market, with circulators moving from state to state to maintain full-time employment. Pl. Undisputed Statement of Facts at ¶¶42,

44, 48, 96, 100, 114.  Professional petition circulators are those people most likely to be able to secure the signatures necessary to secure ballot access and are most sought after for initiative petition drive proponents.  Pl. Undisputed Statement of Facts at ¶¶34, 35, 36, 37, 38, 39, 41, 43, 45, 46, 48, 59, 60, 66, 68, 85, 90, 114, 124, 136.  The evidence also demonstrates that recruiting new petitioners in Montana is not a substitute for the hiring of trained professional circulators.  Pl. Undisputed Statement of Facts at ¶¶35, 43, 45, 87, 152, 153, 154, 155, 156.

In order for out-of-state petition circulators to work on a Montana initiative or referendum petition, they are required to work with an in-state "witness" who watches the signatures being collected so that they can lawfully execute the petition affidavit made part of every petition.  Professional circulators do not like, and will often refuse to work with in-state witnesses because they limit the number of hours they can work to the hours the in-state witness is willing to work, the sometimes do not show up for work, interfere with the petition process, start arguments with potential signers – all of which impairs "core political speech."  Pl. Undisputed Statement of Facts at ¶¶97, 158, 159, 160, 161, 162, 164, 165.

Additionally, because the Montana's residency requirement imposes the need for out-of-state professional circulators to work with an in-state "witness" the economic impact effectively doubles the cost of signatures collected by out-of-state petition circulators because the proponents must pay both an in-state

"witness"  who must tag along with the professional circulator, such that the proponents must pay twice for each signature so collected.  Pl. Undisputed Statement of Facts at ¶163.  Silver Bullet, an out of state petition firm run by Tim Mooney, placed a bid at Paul Jacob's request on February 6, 2018, for the CI-117 2016 initiative petition drive which was $469,000 for 80,000 signatures, with an additional $80,000 deduction ($1.00 per signature) if the residency requirement was enjoined by the court – a savings of $111,000 or 22.2% over the bid Montanans for Citizen Voting received from one of the two in-state petition firms AMT who bid $500,000.  Pl. Undisputed Statement of Facts at ¶¶61, 167.

Accordingly,  strict  scrutiny  is  the  appropriate  standard  of  review  for Montana's residency requirement for initiative and referendum petition circulators.

> 3.      Montana's Residency Requirement for Initiative and
> Referendum Petition Circulators is Not Narrowly Tailored to
> Advance a Compelling Governmental Interest.

Once this Court determines political speech has been burdened and that strict scrutiny must be applied; it is presumed that the law, or regulation, or policy is unconstitutional.  *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  The government then has the burden to prove that the challenged law is constitutional.  *Federal Election Com'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 450-51 (2007).  To withstand strict scrutiny, the government must prove that the law is necessary to achieve a compelling governmental interest.  *Id*.  If this is proved, the state must

then demonstrate that the law is also narrowly tailored to achieve the asserted interest.  *Id.*

In order to meet its burden of proof, the government "must do something more than merely posit the existence of the disease sought to be cured." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) (citing *Quincy Cable TV, Inc. v. FCC*, 768 F.2d 1434, 1455 (1985)).  In other words, the government must factually prove the existence of the evil and that the asserted interest is necessary and narrowly tailored to remedy that evil. Under the requirement that any policy must be narrowly tailored to advance the asserted compelling governmental interest, Defendants cannot forego a policy which is clearly less burdensome on free speech and association rights in favor of the policy challenged in this action.

Plaintiffs readily concede that Montana has a compelling governmental interest in the integrity of its election process including the circulation of initiative and referendum petitions.  As part of that compelling state interest, the State of Montana has a compelling governmental interest in ensuring compliance with its election laws and the ability to subpoena anyone involved in the election process for any subsequent investigation, court proceeding and even prosecution.

To establish the need to regulate non-resident circulators, defendants must prove that non-residents are more likely to commit fraud then residents.  The court in *Libertarian Party of Virginia v. Judd*, 881 F.Supp. 2d 719 (E.D. Va. 2012)

rejected Defendants' citation to instances of non-residents engaging in voter fraud, this allegation does not support the contention that the fraud was committed because these individuals were non-residents.  Multiple federal courts have rejected the idea that a non-resident circulators are inherently less honest.  *See, e.g.*, *Meyer*, 486 U.S. at 426; *Brewer*, 531 F.3d at 1037; *Yes on Term Limits  v. Savage*, 550 F.3d 1023, 1029 (10th Cir. 2008). No federal court has ever accepted that a circulator's voter registration status implicates suspicion of honesty.

To the extent that defendants allege that the in-state residency requirement is necessary to make sure that circulators are within the state's subpoena power, the courts in *Brewer*, *Yes on Term Limits*, *Citizens in Charge v. Gale*, 810 F.Supp.2d 916 (D. Neb. 2011), *Libertarian Party of Virginia v. Judd*, 718 F.3d 308 (4th Cir. 2013), *Green Party of Pennsylvania v. Aichele*, 89 F.Supp.3d 723 (E.D. Pa. 2015) have all ruled that such an interest is not narrowly tailored, as states could require circulators to submit to their subpoena power before becoming a circulator.

Plaintiff  Ferrell, in this action has already testified that she is willing to submit to the jurisdiction and subpoena power of Montana as a condition to being permitted to freely circulate initiative and referendum petitions in Montana.  Pl. Undisputed Statement of Facts at ¶98.

Accordingly, Montana's restriction that only Montana residents may lawfully circulation initiative and referendum petitions in Montana is not narrowly

tailored to advance a compelling governmental interest.   Plaintiffs' motion for summary judgment should be granted.

> **D.** **Montana's Prohibition on Compensating Circulators of Initiative Petitions Based on the Number of Signatures Collected Violates Rights Guaranteed to Plaintiffs' Under the First and Fourteenth Amendments to the United States Constitution (Counts III & IV).**
>
> 1. Strict Scrutiny Analysis Applies to Review of Montana's Pay Per Signature Ban for Initiative and Referendum Petitions.

Mont. Code Ann. §13-27-102(2)(b) prohibits the payment to circulators of initiative petitions anything of value based upon the number of signatures gathered. Mont. Code Ann §13-27-102(2)(b).

As noted above, courts readily hold that election laws impose severe burdens, and are subject to strict scrutiny where, as here, they make it less likely that the proponent will gather the number of signatures required for the ballot (thereby preventing proponents from making the initiative issue a matter of focus in a statewide election), eliminate the persons who are best able to convey proponents' message, limit the number of persons who will convey the proponents' message, reduce the size of the audience proponents can reach, or otherwise increase the overall cost of signature gathering. *Buckley*, 525 U.S. at 194-95; *Meyer*, 486 U.S. at 422-24; *Campbell v. Buckley*, 203 F.3d 738 (10th Cir. 2000); *Indep. Inst. v. Buescher*, 718 F.Supp.2d 1257, 1269-71 (D.Colo. 2010).

In *Meyer*, the Court struck down a Colorado statute which made it illegal to pay petition circulators. The statute, the Court concluded, imposed a burden on political expression that the state failed to justify. The Court held that the circulation of an initiative petition constitutes "core political speech," *id*. at 421-22, which was burdened in two ways by Colorado's ban on paying petition circulators:

> First it limits the number of voices who will convey appellees' message and the hours they can speak and, therefore, limits the size of the audience they can reach. Second, it makes it less likely that appellees will garner the number of signatures necessary to place the matter on the ballot, thus limiting their ability to make the matter the focus of statewide discussion.

*Id*. at 422-23. The Court further explained that:

> The State's interest in protecting the integrity of the initiative process does not justify the prohibition because the State has failed to demonstrate that it is necessary to burden appellees' ability to communicate their message in order to meet its concerns. The Attorney General has argued that the petition circulator has the duty to verify the authenticity of signatures on the petition and that the compensation might provide the circulator with a temptation to disregard that duty. No evidence has been offered to support that speculation, however, and we are not prepared to assume that a professional circulator – whose qualifications for similar future assignments may well depend on a reputation for competence and integrity – is any more likely to accept false signatures than a volunteer who is motivated entirely by an interest in having the proposition placed on the ballot.

*Id*. at 426.

Based on *Meyer*, the district court in *Limit v. Maleng*, 874 F.Supp.1138 (W.D. Wash. 1994), invalidated a Washington statute which prohibited payment of petition circulators on initiative and referendum petitions on a per-signature basis. The State of Washington maintained that its statute was constitutionally permissible since, unlike the Colorado statute at issue in *Meyer*, Washington's statute did not totally ban the payment of signature gatherers but rather merely banned the per-signature payment of circulators and that its statute was thus narrowly focused, content-neutral regulation tailored to further the State's policy of protecting the integrity of the initiative process. However, the court found that the State had failed to adduce "actual proof of fraud stemming specifically from the payment per signature method of collection," and thus the State had failed to sustain its burden to justify the legislation. *Id*. at 1141. The *Limit* Court rejected the argument that the State of Washington needed only to show that the legislation was based on the legislators' perception that payment per signature encouraged fraud. Instead, in reliance on *Meyer*, the court held, "Unless there is some proof of fraud or actual threat to citizens' confidence in government which could provide a compelling justification, the right of public discussion of issues may not be infringed by laws restricting expenditures on referenda and initiative campaigns." *Id*. at 1141. Though *Limit* is not binding on this court, the *Limit* court's reasoning , flows directly from the Supreme Court's opinion in *Meyer*.

23

2.   <u>Evidence Supports Strict Scrutiny Analysis</u>.

Strict scrutiny applies to the review of Montana's ban on pay-per-signature compensation for initiative and referendum petition circulators for the same reason that strict scrutiny has been applied to every court reviewing state imposed residency restrictions imposed on petition circulators (and for the same reason why Secretary of State Stapleton believes that the residency restriction is likely unconstitutional).

Unlike the incomplete factual record developed by Plaintiffs in *Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006) the undisputed and unequivocal record developed in this case demonstrates that Montana's pay per signature compensation ban for initiative and referendum petition circulators: (1) Makes it less likely that the proponents of an initiative will gather the number of signatures required for ballot access. Pl. Undisputed Statement of Facts at ¶¶59, 60, 62, 137; (2) Reduced the pool of available circulators available to initiative and referendum proponents to circulate their petitions.  Pl. Undisputed Statement of Facts at ¶96, 138; (4) Eliminates the persons who are best able to convey the initiative and referendum proponents' message.  Pl. Undisputed Statement of Facts at ¶96, 139; (5) Reduces the size of the audience initiative and referendum proponents can reach.  Pl. Undisputed Statement of Facts at ¶96, 140; and (5) otherwise increases

the overall cost of signature gathering.  Pl. Undisputed Statement of Facts at ¶141;

Pl. Exhibits I, J, & K.

The record developed in this case also shows that Governor Brown, in his

veto statement to the California State Senate rejecting Senate Bill 168 which would

have imposed a pay per signature ban for initiative and referendum petition

circulators in California explained:

> I am returning Senate Bill 168 without my signature.  This Bill makes
> it a crime for a person to pay or receive money (or any other thing of
> value) based – directly or indirectly – on the number of signatures
> obtained on a state or local initiative, referendum, or recall petition.
> While I understand the potential abuses of the current per-signature
> payment system, I believe this bill is flawed for two reasons.  First,
> this Bill would effectively prohibit organizations from even setting
> targets or quotas for those they hire to gather signatures.  It doesn't
> seem very practical to me to create a system that makes productivity
> goals a crime.  Second, per-signature payment is often the most cost-
> effective method for collecting the hundreds of thousands of
> signatures needed to qualify a ballot measure, thereby further favoring
> the wealthiest interests.  This is a dramatic change to a long
> established democratic process in California.  After reviewing the
> materials submitted in support of this bill, I am not persuaded that the
> unintended consequences won't be worse than the abuses the bill aims
> to prevent.

*See*, Pl. Exhibit I.  Tim Mooney testified that he does not disagree with Governor

Browns veto statement.  Pl. Undisputed Statement of Facts at ¶78.

The evidence also shows that pay per signature compensation bans for

petition circulators do not work as hard during the last paycheck period because

they know that they will get paid their last paycheck no matter what they do to get

25

signatures.  Pl. Undisputed Statement of Facts at ¶76.  Plaintiff Ferrell told Paul

Jacob of Plaintiff Liberty Initiative Fund that she would work on CI-117 if the

residency and pay per signature ban was lifted.  Pl. Undisputed Statement of Facts

at ¶96, 100.  Plaintiff Nathan Pierce has direct experience in the inefficiency

imposed on petition drives under the pay per hour compensation model because

during one such petition drive operated under a pay per hour compensation scheme

Plaintiff Pierce when out checking on petitioners discovered a lady, being paid

$15.00 per hour in her home, doing nothing, fraud which the petition drive had to

compensate.  Pl. Undisputed Statement of Facts at ¶117.  The evidence shows that

paying petitioners by the hour fails to motivate them to secure as many valid

signatures in as short a time as possible.  Pl. Undisputed Statement of Facts at

¶¶116, 117,

Accordingly the evidence developed in this action is purposefully virtually

cognate with the record developed in *Independence Institute v. Gessler*, 936

F.Supp.2d 1256 (D. Colo. 2013).  In *Independence Institute*, the court struck down

Colorado's mere partial ban on compensating circulators based on the number of

signatures gathers.  Section 1-40-112(4) of the Colorado Revised Statutes limited

compensation to petition circulators based on the number of signatures gathered to

20% of the total their compensation.  *Id*. at 1259.  The district court found that the

partial ban was unconstitutional after evidence was produced that the partial ban

caused trained professional circulators to refuse to circulate in Colorado, thereby reducing the pool of persons available to circulate petitions which triggered strict scrutiny analysis. *Id*. at 1275-77. The Court in *Independence Institute* confirmed that:

> Petition circulation….is core political speech, because it involves interactive communication concerning political change and consequently, First Amendment protection for this activity is at its zenith. "Where the government restricts the overall quantum of speech available to the election or voting process…[such as] where the quantum of speech is limited due to restrictions on…the available pool of circulators or other supporters of a candidate or initiative," strict scrutiny applies.

*Id*. at 1277 quoting, *Yes on Term Limits v. Savage*, 55 F.3d 1023, 1028 (10h Cir. 2008). The Sixth Circuit upheld the district court's finding in *Citizens For Tax Reform v. Deters*, 518 F.3d 375 (6th Cir. 2008) and applied strict scrutiny to a pay per signature ban based on nearly the same record developed by Plaintiffs in this action. Other courts have also applied strict scrutiny analysis to pay per signature bans in striking them as unconstitutional. *See*, *LIMIT v. Maleng*, 874 F.Supp. 1138 (W.D. Wash. 1994); *Term Limits Leadership Council v. Clark*, 984 F.Supp. 470 (S.D. Miss. 1997); *On Our Terms '97 PAC v. Secretary of State of Maine*, 101 F.Supp.2d 19 (D. Maine 1999). Accordingly, strict scrutiny applies to the review of Montana's ban on pay per signature for initiative and referendum petition circulators.

3.   Montana's Pay Per Signature Ban for Initiative and
Referendum Petition Circulators is Not Narrowly Tailored to
<u>Advance a Compelling Governmental Interest</u>.

Montana's pay per signature ban is not narrowly tailored to advance a compelling governmental interest for the same reason why Defendants cannot show that the residency requirement is narrowly tailored to advance Montana's legitimate interest in the integrity of its election process.  So long as petition circulators are required to submit to the jurisdiction of Montana and its subpoena power, then any allegation of petition fraud can be investigated and fully prosecuted and Montana has no further interest in the manner in which initiative petition circulators are compensated.  And, as noted above, Plaintiff Sherri Ferrell has already expressly agreed to submit to the subpoena powers of Montana as a condition precedent to being allowed to freely circulate initiative and referendum petitions in Montana, as she is now permitted to do for political candidates.

Forcing any circulator, including those few in-state circulators who are free to move out of Montana, to expressly submit to Montana's ongoing jurisdiction over them in the event of any allegation of petition fraud combined with the ability to investigate and prosecute any acts of actual petition fraud more narrowly effectuates Montana's legitimate interest in electin integrity.

Furthermore, Montana can even go further.  Montana can, like Oregon, institute a registration scheme for initiative and referendum petition circulators

(and candidate circulators, just to keep it fair and equal) whereby they must register with the Secretary of State and provide proof of identity and current legal address before they can circulate petitions in Montana.  Any, or all of which, more narrowly advances Montana's only legitimate interest in this area – election integrity, than the blanket economic punishment prohibiting pay per signature compensation plans for initiative and referendum petition circulators, a ban not similarly imposed on candidate petition circulators. Pl.  Undisputed  Statement  of Facts at ¶98.

Accordingly, Plaintiffs' motion for summary judgment should be granted.

## III.   **CONCLUSION**

For all the foregoing stated reasons, Plaintiffs' motion for summary judgment as to Counts I, II, III & IV of Plaintiffs' Amended Complaint should be granted.

Respectfully submitted,

Dated:  October 4, 2019             __/s/ **Paul A. Rossi**_____

Paul A. Rossi
*Counsel for Plaintiffs*
IMPG Advocates, Inc.
316 Hill Street
Mountville, PA  17554
717.681.8344
Paul-Rossi@comcast.net

## <u>CERTIFICATE OF SERVICE</u>

Plaintiffs, by and through their undersigned legal counsel, hereby certify that on this date, they have caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court for the United States District Court for the District of Montana by using the Court's CM/ECF system.

I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished through the CM/ECF system.

Dated:  October 4, 2019                          s/ Paul A. Rossi_____
                                                 Paul A. Rossi
                                                 *Counsel to Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 7.1(D)(2)(E)</u>

Pursuant to Rule 7.1(d)(2)(E) of the Local Rules of Civil Procedure, Plaintiffs' by and through their undersigned legal counsel hereby certify that the body of the forgoing brief, contains 5,293 words, as determined by the word count function of the Microsoft Word processing software used to prepare this document.

Dated:  October 4, 2019                           s/ Paul A. Rossi_____
                                                  Paul A. Rossi
                                                  *Counsel to Plaintiffs*

## <u>CERTIFICATION OF NON-CONCURRENCE</u>

Plaintiffs, by and through their undersigned legal counsel certify that opposing counsel was invited to concur in Plaintiffs' motion for summary judgment.  Opposing counsel graciously declined the offer.

Dated:  October 4, 2019                           s/ Paul A. Rossi_____
                                                  Paul A. Rossi
                                                  *Counsel to Plaintiffs*