GALLUS LAW
Chris J. Gallus
1423 Otter Road
Helena, MT  5962-7641
Phone:  406.459.8676
Fax:  406.443.0262
Chrisjgalluslaw@gmail.com

IMPG ADVOCATES, INC.
Paul A. Rossi
316 Hill Street
Mountville, PA  17554
717.961.8978
Paul-Rossi@comcast.net

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | | |
|---|---|---|
| **NATHAN PIERCE; MONTANA COALITION FOR RIGHTS; MONTANANS FOR CITIZEN VOTING; LIBERTY INITIATIVE FUND; and SHERRI FERRELL** | : : : : : | |
| | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| | : | **6:18-cv-00063-CCL** |
| **v.** | : | **Judge Charles C. Lovell** |
| | : | |
| **COREY STAPLETON, in his official capacity as the Secretary of State for the State of Montana; AND, TIM FOX, in his official as the Attorney General of Montana,** | : : : : | **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| | : | |
| **Defendants.** | : | ***Filed Electronically*** |

# **TABLE OF CONTENTS**

Table of Contents………………………………………………………...………2

Table of Authorities………………………………………………………..…4

I.     Introduction………..…………………………………………...……7

II.    Argument…………………………………………………………....9

       A.    Plaintiffs Have Standing…………………………………………..…9

       B.    The Challenged Residency Requirement and Pay-Per-Signature
             Ban Impose a Severe Burden on Rights Guaranteed  to Plaintiffs
             Under the First and Fourteenth Amendments, Triggering Strict
             Scrutiny Analysis…………………………………………………15

             1.    Residency Requirement…………………………………..…15

             2.    Pay-Per-Signature Compensation Ban………………….…19

       C.    Challenged Residency Requirement and Compensation Ban Are
             Not Narrowly Tailored to Advance a Compelling Governmental
             Interest…………………………………………………...……..22

             1.    Montana Has a Compelling Governmental Interest in
                   Protecting Election Process from Fraud……………………...22

             2.    The Challenged Residency Requirement and Per-Signature
                   Compensation Ban are Not Narrowly Tailored to Protect
                   Montana's Asserted Interest in Protecting Against
                   Petition Fraud…………………………………………………24

             3.    Defendants Offer No Evidence that the Challenged
                   Residency Requirement and Compensation Ban Protect
                   Against Petition Fraud…………………………………………29

III.   Conclusion……………………………………………….………30

Certificate of Service……………………………………………………....31

Word Count Certification……………………………………………………...….32

# TABLE OF AUTHORITIES

## Cases

*Allen v. Wright*,
    468 U.S. 737 (1984)……………………………………………...…..9

*Babbitt v. United Farm Workers National Union*,
    442 U.S. 289 (1979)………………………………………..…………..10, 11

*Buckley v. American Constitutional Law Foundation*,
    525 U.S. 182 (1999)………………………………………………..16

*Citizens for Tax Reform v. Deters*,
    518 F.3d 375 (6th Cir. 2008)………………………………..…21

*Citizens in Charge v. Gale*,
    810 F.Supp.2d 916 (D. Neb. 2011)………………………………...16

*Daien v. Ysursa*,
    711 F.Supp. 1215 (D. Idaho 2010)………………………..…...11, 12, 16

*De La Fuente v Padilla*,
    930 F.3d 101 (9th Cir. 2019)……………………………...…….....10

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008)…………………………………..………….10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*,
    528 U.S. 167 (2000)……………………………………………9

*Green Party of Pennsylvania v. Aichele*,
    89 F.Supp.3d 723 (E.D. Pa. 2015)………………………………....17

*Idaho Coalition United for Bears v. Cenarrusa*,
    234 F.Supp.2d 1159 (D. Idaho 2001)…………………………......12

*Idaho Coalition United for Bears v. Cenarrusa*,
    342 F.3d 1073 (9th Cir. 2003)…………………………...…….13

*In re Initiative Petition No. 379*,
    155 P.3d 32 (Okla. 2006)……………………………………………………..25

*Independence Institute v. Gessler*,
    936 F.Supp.2d 1256 (D. Colo. 2013)………………………………………....21

*Initiative & Referendum Inst. v. Walker*,
    450 F.3d 1082 (10th Cir. 2006)………………………………………....12

*Krislov v. Rednour*,
    226 F.3d 851 (7th Cir. 2000)………………………………………....16

*Los Angeles v. Lyons*,
    461 U.S. 95 (1983)………………………………………………….....10

*Libertarian Party of Virginia v. Judd*,
    718 F.3d 308 (4th Cir. 2013)………………………………….…….17

*Limit v. Maleng*,
    874 F.Supp. 1138 (W.D. Wash. 1994)…………………………..……21

*LSO Ltd., v. Stroh*,
    205 F.3d 1146 (9th Cir. 2000)………………………………………11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)……………………………………………....9

*Marijuana Policy Project v. Miller*,
    578 F.Supp.2d 1290 (D. Nev. 2008)…………………………...…...…12

*Meyer v. Grant*,
    486 U.S. 414 (1988)…………………………………………..…21

*Nader v. Blackwell*,
    545 F.3d 459 (6th Cir. 2008)……………………………………..16

*Nader v. Brewer*,
    531 F.3d 1028 (9th Cir. 2008)………………………………………16

*On Our Terms '97 PAC v. Secretary of State of Maine*,
   101 F.Supp.2d 19 (D. Maine 1999)……………………………………...…22

*Prete v. Bradbury*,
   438 F.3d 949 (9th Cir. 2006)…………………………………………………..19

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. 2009)…………………………………………….…9

*Term Limits Leadership Council v. Clark*,
   984 F.Supp. 470 (S.D. Miss. 1997)…………………………………………...22

## **Statute, Rules and Other Authority**

U.S CONST. Art. III, §1…………………………………………………...…..9

Mont. Code Ann. § 13-27-102(2)(a)…………………………………………...15

Mont. Code Ann. § 13-27-102(2)(b)…………………………………………...19

## I.   __INTRODUCTION__

In general, Defendants' main overriding argument in support of their motion for summary judgment is essentially, that because Montana experienced an incident of alleged petition fraud in 2006 during the circulation of an initiative petition, that Montana is free to impose whatever remedy it sees fit to protect the integrity of the initiative election process.  Such an argument has never been accepted by any federal court in reviewing the constitutionality of residency requirements for the circulation of election petitions of any sort, and initiative petitions in particular or for reviewing the constitutionality of state imposed restrictions on compensating petition circulators based on the number of valid signatures collected.

Strict scrutiny applies to the review of both the challenged residency requirement and the ban on compensating petition circulators based on the number of valid signatures they collect.  Strict scrutiny applies to both challenges because the challenged statutes both severe impairments to First Amendment speech because they severely limit the pool of available message carriers available to petition circulators which, in turn, impairs their ability to efficiently secure the number of valid signatures necessary to secure ballot access.  The challenged residency restriction diminishes the pool of available circulators on its face because it expressly excludes all non-Montanans from the free circulation of initiative

petitions in Montana. The challenged ban on compensating initiative petition circulators based on the number of valid signature they collect is established based on the record evidence developed in this action that the most productive out-of-state professional petition circulators avoid jobs where their compensation is based on the number of hours worked.

Once strict scrutiny analysis is applied to the review of the challenged statutes, Defendants must provide evidence that the challenged restrictions are narrowly tailored to advance a compelling governmental interest.  Plaintiffs concede that Montana has a compelling interest in protecting the integrity of the initiative election process.  However, both challenged statutes fail because Defendants have produced no evidence that the challenged bans actually remedy the threat of petition fraud nor that the challenged statutes are narrowly tailored to protect the state's asserted interests.  Defendants are uniquely hamstrung in showing that the challenged restrictions actually protect against petition fraud because Montana has not applied the same restrictions to the circulation of candidate petitions and Defendants have not produced any evidence that without the challenged restrictions Montana suffers from "rampant" petition fraud in the candidate petition arena that the challenged restrictions are meant to protect against in the initiative petition arena.  Furthermore, Defendants fail to explain how more narrow provisions, such as requiring initiative petition circulators to submit to the

jurisdiction and subpoena power of Montana in any investigation and prosecution

of petition fraud, coupled with the requirement that petition circulators provide

official photo identification to established the address at which a subpoena may be

served on them as a condition precedent to being able to lawfully circulate

initiative petitions in Montana is not a more narrow protection of Montana's

asserted interests that the blanket residency and compensation bans challenged in

this action.

Accordingly, Defendants' motion for summary judgment must be denied.

## II.   <u>ARGUMENT</u>

### A.   <u>Plaintiffs Have Standing</u>

First, Defendants make a back-door attack on Plaintiffs' standing by arguing

that their injuries are speculative.  Def. Brief at pp.11-15.   Article III of the United

States Constitution limits federal court jurisdiction to actual "cases" and

"controversies."  *See*, U.S. CONST. Art. III §1; *see also*, *Allen v. Wright*, 468 U.S.

737, 750 (1984); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009). To

satisfy the requirements of Article III standing, a party must suffer an "injury in

fact" that is both "concrete and particularized" and "actual or imminent, not

conjectural or hypothetical."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*

*(TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*,

504 U.S. 555, 560-61 (1992)).  The "injury in fact" inquiry focuses on "whether

the party invoking jurisdiction had the requisite stake in the outcome," although the injury "need not be actualized." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).   Rather, a plaintiff may bring a suit based on a prospective injury provided that the threat of enforcement is sufficiently "real, immediate, and direct." *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *see also Babbitt v. Farm Workers*, 442 U.S. 289,298 (1979)(A plaintiff may challenge the prospective operation of a statute that presents a realistic and impending threat of direct injury).

In *De La Fuente v. Padilla* 930 F.3d 101 (9th Cir. 2019), the plaintiff was an independent presidential candidate in the 2016 general election.  In order to gain access to California's 2016 presidential general election ballot, Mr. De La Fuente was requirement to collect valid signatures on a nominating petition equal to 1% of the registered voter population of the State of California within a 105 day period. De La Fuente determined that collecting the required signatures within the 105 day window was not economically feasible and so decided to not circulate petitions to gain access to California's 2016 general election ballot.  Instead, De La Fuente filed constitutional challenges to the number of signatures required to gain access and the time period within which he was required to collect them.  The California Defendant, the Secretary of State, challenged Mr. De La Fuente's standing to maintain his action since he had failed to even attempt to collect the required signatures.  On appeal, the Ninth Circuit held De La Fuente had standing to

challenge California's ballot access restrictions.  The Ninth Circuit explained that "De La Fuente has suffered a concrete injury that is not merely speculative.  De La Fuente's declaration confirms that he is running for President of the United States in 2020" and "he will suffer an injury in fact.  He therefore has standing."  *De La Fuente*, 930 F.3d at 1105.

Likewise, the mere intent to circulate petitions in future elections has been recognized by district courts within this circuit to confer the requisite concrete injury in fact sufficient to establish Article III standing to challenge ballot access restrictions.  In *Daien v. Ysursa*, 711 F.Supp. 1215 (D. Idaho 2010), the district court held that an Arizona resident and past supporter of independent presidential candidate Ralph Nader who wanted to gather signatures for a then yet unknown independent presidential candidates in Idaho in future elections had standing to challenge Idaho's requirement that only Idaho residents may freely circulate election petitions in Idaho.  The *Daien* court relied on the Ninth Circuit's decision in *LSO, Ltd. v Stroh*, 205 F.3d 1146 (9th Cir. 2000), instructing that "it is sufficient for standing purposes that the plaintiff intends to engage in 'a course of conduct arguably affected with a constitutional interest' and that there is a credible threat that the challenged provision will be invoked against the plaintiff."  *LSO Ltd., v Stroh,* 205 F.3d 1146, 1154-55(9th Cir. 2000) (quoting *Farm Workers*, 442 U.S. at 298). The court is *Daien* further explained that:

> Other courts specifically examining a claimant's stated desire to
> engage in a course of conduct with a constitutional interest find
> standing where there is proof that the plaintiff: (1) has engaged in the
> type of speech affected by the challenged government action; (2)
> indicates a desire to engage in such speech in the future, and (3) has
> made a plausible claim that he will not do so because of a credible
> threat that the challenged regulation will be enforced.

*Daien*, 711 F.Supp. at 1223 citing, *Marijuana Policy Project v. Miller*, 578

F.Supp.2d 1290, 1301(D. Nev. 2008); *Initiative & Referendum Inst. v. Walker*, 450

F.3d 1082, 1089 (10th Cir. 2006)(en banc).  The court in *Daien* found that for

standing purposes, it is sufficient that *but for* the residency requirement, the

plaintiff in *Daien*, "a historic supporter of independent candidates, could circulate

petitions and gather signatures in Idaho today for any candidate."  *Daien*, 711

F.Supp.2d at 1225.  The *Daien* court notes its finding was consistent with the

decision in *Idaho Coalition United for Bears v. Cenarrusa*, 234 F.Supp.2d 1159

(D. Idaho 2001), which found standing where the individual plaintiffs previously

circulated ballot initiative petitions and indicated an intent to do so in the future,

even though the plaintiffs had no petitions to circulate at the time of the lawsuit

they were well-known for their initiative work and had full control over whether

they would engage in the initiative process.  *Daien*, 711 F.Supp.2d 1215 at 1226.

The *Daien* court further noted that the *Cenarrusa* court found that plaintiffs'

statements of future intent were neither hypothetical nor speculative. *Id*. The *Daien*

court further noted that the Ninth Circuit upheld the decision in *Cenarrusa* on the

merits and did not address the standing issue.  *Id.*; *see also Idaho Coalition United*

*for Bears v. Cenarrusa*, 342 F.3d 1073 (9th Cir. 2003).

In this action, Plaintiffs have asserted that they intend to circulate initiative

petitions in future elections and refrained from doing so in 2018 because the

challenged residency and per-signature compensation ban severely restricts their

ability to hire the out-of-state  professional circulators they believe is necessary to

efficiently secure the required number of signatures to secure access to Montana's

ballot.   Defendants admit that Plaintiff Montana Coalition for Rights has worked

on four ballot initiatives since 2007.  Def. Statement of Facts ¶22.  Defendants

have also admitted that Plaintiff Montana Coalition for Rights has stated that it

intends to pursue Ballot Issue 115 in the 2020 election cycle but has not taken any

steps to do so.  Def. Statement of Facts ¶25.  Plaintiff Montana Coalition for Rights

(:MCR") expressly testified that: "MCR intends to propose and advance ballot

initiatives in Montana in future elections" and "MCR is coordinating efforts for a

new ballot initiative similar to CI-115."  *See*, Pierce Dep. at 28:1-20.

Paul Jacob for Liberty Initiative Fund testified that with respect to launching

CI-117 for the 2020 election:

> If everything was ready to go in terms of the money raised, we could
> start rights now, and we'd have a good bit of time. Bt all the money
> isn't raised.  And the ability to raise that money, and the ability to pull
> people together is waiting on have the circumstances that will give us
> a high probability of success, as opposed to a lower probability.  And
> so, I'm not spending all my time right now working to get Montana

> ready, because I'm working to get other things ready where we do
> have a high probability of success. And so, you know, right now, it's
> important that this litigation come to a conclusion for us to make the
> decision to invest the time to be ready to start the petition drive and
> complete it.

*See*, Jacob Dep. at 74:14 – 75:13. Shows that the challenged restrictions impair the

ability of Plaintiffs Montanans for Citizen Voting and Liberty Initiative Fund to

demonstrate a high probability of success necessary to secure the funding for their

stated intent to circulate CI-117 in future elections. As a result, the evidence

shows that the challenged restrictions impose a real and not a hypothetical

impairment of the constitutional rights of Plaintiffs to circulate ballot initiatives in

Montana in future elections. Furthermore, Paul Jacob and Liberty Initiative Fund

have been involved in over 100 initiative and referendum efforts and are currently

involved in 6 statewide initiative efforts in North Dakota, Maine, Michigan,

Florida, Nevada and Colorado, and so, clearly have the reliability to execute on

their intent to circulate petitions in Montana in future elections in the absence of

the challenged restrictions. *See*, Jacob Dep. at 19:15-20:1; 20:2-22:2.

Furthermore, Defendants' argument that Plaintiffs claims are speculative

because they have not taken steps to qualify for the 2020 ballot misses the mark as

no deadlines have passed to prevent Plaintiffs' intent to circulate initiative petitions

for the 2020 elections and especially with respect to Montanans for Citizen Voting,

their initiative for citizen voting was approved and ready to be circulating in 2018

and is ready to be resubmitted, verbatim, with virtual assurance that it will be

approved and quickly put into the field to gather signatures to qualify for the 2020

general election ballot.  And further, if the ruling in this case prevents circulation

of petitions in 2020, Plaintiffs have standing to maintain their challenge to the

residency requirement and pay-per-signature ban so that they can freely circulate

initiative petitions free from the challenged ballot access restriction for elections

beyond 2020.   So it is Defendants who are engaging in speculation, not the claims

advanced by Plaintiffs Liberty Initiative Fund, Montanans for Citizen Voting,

Nathan Pierce or Montana Coalition for Rights.

　　　　Accordingly, Plaintiffs have standing to maintain their constitutional

challenges to the residency requirement for initiative petition circulators and the

ban on compensating initiative petition circulators based on the number of valid

signature that they collect.

**B.　　The Challenged Residency Requirement and Pay-Per-Signature
Ban Impose a Severe Burden on Rights Guaranteed to Plaintiffs
Under the First and Fourteenth Amendments, Triggering Strict
<u>Scrutiny Analysis</u>.**

**1.　　<u>Residency Requirement</u>**

Mont. Code Ann. § 13-27-102(2)(a) requires that initiative and referendum

petitions may only be circulated by Montana residents.  Accordingly, the

challenged statutes prohibits the residents of 49 States from freely circulating

initiative petitions in Montana.  As noted in Plaintiffs' brief in support of

15

Plaintiffs' motion for summary judgment, there is wide consensus among federal district and courts of appeal that in-state residency requirements for the circulation of election petitions of any sort, trigger strict scrutiny analysis because such restrictions decrease the number of available message carriers which impose a severe restriction on "core" First Amendment speech. In *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999), the Court struck down under strict scrutiny review a state requirement that initiative petition circulators be registered voters of the state, because the "requirement cuts down the number of message carriers in the ballot-access arena without impelling cause." *Buckley*, 525 U.S. at 197.

Since *Buckley*, every federal district and circuit courts of appeal have applied strict scrutiny analysis to state residency requirements to circulate initiative and candidate nomination petitions. *See*, *Citizens in Charge v. Gale*, 810 F.Supp.2d 916 (D. Neb. 2011)(invalidating state residency requirement for circulators of candidate and ballot initiative petitions); *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008) (invalidating state residency requirement for circulators of presidential candidate petitions); *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008)(same); *Daien v. Ysursa*, 711 F.Supp.2d 1215 (D. Idaho 2010) (same); *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000) (invalidating residency requirement for circulators of petition for congressional candidate petitions);

*Libertarian Party of Virginia v. Judd*, 718 F.3d 308 (4th Cir. 2013); *Green Party of Pennsylvania v. Aichele*, 89 F.Supp.3d 723 (E.D. Pa. 2015).

The reduction in the number of available experienced petition circulators resulting from the challenged residency requirement imposes a unique severe burden on the Montana Plaintiffs in this action.  Defendants' expert witness CB Pearson admits that the pool of experienced petition circulators in the State of Montana is small.  Pearson Dep. at 145:16-21.  Tim Mooney explains that because Montana does not have a large number of petitions to circulate in an election cycle, there is not a ready pool of people who are experienced in getting signatures for an initiative petition in Montana.  *See*, Mooney Dep. at 95:1-96:8.

Defendants' expert witness CB Pearson further admits that there are no firms in Montana that focus solely on signature collection.  *See*, Pearson Dep. at 82:15-22;  84:25-85:3; 86:2-87:7;  114:6-12.  Defendants' expert witness Pearson also explains that his firm will not take on any client, only clients that advance issues that his firm (M+R Strategic Services)believes is in the public interest.  *See*, Pearson Dep. at 61:7-74:17.  For instance, M+R would never accept a client that advocated: expansion of gas and oil drilling, rolling back environment regulations, liberalize gun regulations,  or any pro-life group or group that sought to restrict reproductive rights *See*, Pearson Dep. at 62:6-20; 64:2-5; 74:13-17.

Therefore, the out-of-state circulator ban challenged in this action uniquely impairs the Plaintiffs in this case as they advocate issues to the right of the political spectrum that M+R would likely reject Plaintiffs as a client – a further impairment in a state that already has a small pool of experienced circulators.  Accordingly, Plaintiffs situation uniquely demonstrates that the consensus among the federal district and courts of appeals that state residency restrictions imposed on circulators of election petitions trigger strict scrutiny analysis is well founded as any law that reduces the number of available circulators imposes a severe restriction on core First Amendment Rights.

With respect to the fresh recruitment of new petition circulators to counter the tight market in experienced circulators in Montana, Tim Mooney explains that the low unemployment rate in Montana coupled with the high pay scale creates a difficult environment to recruit capable individuals to circulate petitions – about 3 in 100 recruited become good enough that they can actually petition in a manner that is efficient to make it economically worthwhile.  *See*, Mooney Dep. at 73:4-74:3; 95:1-96:8.  Mooney also testified that most petition fraud (intentional or unintentional) is usually committed by the new circulator discovering, for the first time, the difficult nature of the job.  *See*, Mooney Dep. at 108:14-109:12. Defendants' expert witness CB Pearson admits that without Montana volunteers the challenged residency requirement would require out-of-state circulators to

work with a Montana resident which would require the proponent to pay two people (on an hourly basis) to collect the same signatures.  *See*, Pearson Dep. at 147:16-152:13.  And, Defendants' expert witness admits that out-of-state residents can be a catalyst to effect necessary change within a state as the Freedom Riders did during the civil rights movement in the 50's and 60's.  *See*, Pearson Dep. at 158:8-159:11.

Accordingly, strict scrutiny the appropriate standard of review to Plaintiffs' challenge of Montana's residency requirement to freely circulate initiative petitions in Montana

## 2.    Pay-Per-Signature Compensation Ban

Mont. Code Ann. § 13-27-102(2)(b) prohibits the payment to circulators of initiative petitions anything of value based on the number of signatures gathered. While the pay-per-signature ban does not on its face diminish the pool of available circulators, the evidence established in this case, like others where such compensation bans have been ruled unconstitutional, shows that experienced petition circulators avoid circulating petitions in jurisdiction which prohibits their compensation based on the number of valid signatures that they collect, and thus reduce the pool of available circulators triggering strict scrutiny review.

Unlike the incomplete factual record established in *Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006), which cause the Ninth Circuit to affirm the district

court's judgments against plaintiffs which had not provided evidence that Oregon's per-signature compensation band reduced the pool of available circulators, Plaintiffs in this action have established the same evidence that have prompted other courts to subject less severe compensation bans to strict scrutiny review.

The evidence in this case shows that Montana's prohibition on the compensation of initiative petition circulators based on the number of valid signatures collected: (1) Makes it less likely that the proponents of an initiative will gather the number of signatures required to secure ballot access. *See*, Jacob Dep. at 29:19-30:19;  31:1-33:24;  40:7-42:12;  68:16-68:23; 74:14-75:20; 87:8-90:1; 186:19-187:1; Mooney Dep. at 95:1-96:8, 104:2-17;  114:2-115:17; Ferrell Dep. at 179:6-180:6;  187:10-12;  Pierce Dep. at 37:12-24;  38:14-39:2;  57:24-59:8; 78:11-79:9;  85:1-86:11;  88:25-89:8;  92:3-12;  94:7-25;  Hurst Dep. at 49:24-50:6;  50:13-51:17;  104:13-105:21; (2) That is reduces pool of experienced circulators available to circulate Plaintiffs' initiative petitions.  *See*, Ferrell Dep. at 90:15-19; 91:2-93.3; 179:6-180:6;  186:25-187:12; Jacob Dep. at 29:19-30:19; 31:1-33:24;  87:8-90:1;   Mooney Dep. at 95:1-96:8; Pierce Dep. at 37:12-24; 57:24-59:8;  92:3-12;  Hurst Dep. at 55:5-14; (3) Eliminates the persons who are best able to convey the initiative and referendum proponents message.  *See*, Ferrell Dep. at 179:6-180:6; 186:25-187:12; Jacob Dep. at 29:19-30:19; 31:1-33:24; Mooney Dep. at 95:1-96:8;  Pierce Dep. at 57:24-59:8; 92:3-12; Hurst Dep. at

55:5-14; and (4) otherwise increases the overall cost of signature gathering. *See*, Jacob Dep. at 116:1-118:24; Mooney Dep. at 45:2-48:5; 95:1-96:8; 114:2-115:17; Pierce Dep. at 36:6-17; 57:24-59:8; Hurst Dep. at 61:1-25.

Based on the Supreme Court's decision in *Meyer v. Grant*, 486 U.S. 414 (1988), the district court in *Limit v. Maleng*, 874 F.Supp. 1138 (W.D. Wash 1994), invalidated a Washington statute which prohibited compensation of initiative and referendum petition circulators on a per-signature basis. Unlike the Colorado statute held unconstitutional in *Meyer*, the Washington statute banned compensation to petition circulators based on the number of signatures they collected. The *Limit* court found that Washington had failed to produce "actual proof of fraud stemming from the payment per signature method of collection." *Id*. at 1141.

In *Independence Institute v. Gessler*, 936 F.Supp. 2d 1256 (D. Colo. 2013), the court struck down, on strict scrutiny review, Colorado's partial ban on compensating petition circulators based on the number of signatures collected. The district court found that the compensation ban was unconstitutional after evidence was produced that the partial compensation ban caused trained professional circulators to refuse to circulate in Colorado, thereby reducing the pool of persons available to circulate petitions which triggered strict scrutiny review. *See also Citizens For Tax Reform v. Deters*, 518 F.3d 375 (6th Cir. 2008)

(applying strict scrutiny review to per-signature compensation ban); *Term Limits Leadership Council v. Clark*, 984 F.Supp. 470 (S.D. Miss. 1997) (same); *On Our Terms '97 PAC v. Secretary of State of Maine*, 101 F.Supp.2d 19 (D. Maine 1999) (same).

It is undisputed that the evidence in this case shows that experienced professional circulators are deterred from traveling to Montana to circulate initiative petitions under the per-signature compensation ban.  Plaintiff Ferrell communicated to Pau Jacob of Plaintiff Liberty Initiative Fund that she would work on CI-117 if enforcement of the residency and compensation bans were enjoined.  *See*, Ferrell Dep. at 179:6-180:6; 186:25-187:9.  And from the position of the initiative proponents, the pay-per signature ban stifles core political speech, and increases costs, because it eliminates the incentive for circulators to continue to make their pitches to voters to sign their petition and extending the time to secure the required number of signatures to secure ballot access.  *See*, Mooney Dep. at 50:7-52:24.

**C.    Challenged Residency Requirement and Compensation Ban Are Not Narrowly Tailored to Advance a Compelling Government <u>Interest</u>.**

**1.    Montana Has a Compelling Governmental Interest in <u>Protecting Election Process from Fraud</u>.**

Plaintiffs readily concede that Montana has a compelling governmental interest in protecting its election process from petition fraud.  There is petition

fraud, and Plaintiffs do not seek to deny this fact of life.  In fact, professional circulators want petition fraud prosecuted to protect their industry and have taken steps to internally punish petition fraud with internal "black-lists" to prevent known petition fraudsters from getting future work circulating petitions and immediate termination by their supervisors.  *See*, Money Dep. at 107:22-108:8; 118:10-120:11; Hurst Dep. at 67:22-70:6.  However, petition fraud is rare.  Tim Mooney testified that he has uncovered petition fraud about a dozen times in his 30 year career.  *See*, Mooney Dep. at 110:1-11.

The problem that Montana suffered from in 2006 is that the alleged perpetrators of the fraud could not be located, not the fact that they were out-of-state residents or that they received their compensation based on the number of signatures they collected.  A Montana resident is just as able to commit the same fraud and evasiveness conduct as a nonresident.

Montana has the power to investigate and prosecute petition fraud.  The proper remedy for the events of 2006, then, is to ensure that any petition circulator who commits fraud in the future is subject to the investigatory and prosecutorial power of the State of Montana.

**2.**     **The Challenged Residency Requirement and Per-Signature Compensation Ban are Not Narrowly Tailored to Protect <u>Montana's Asserted Interest in Protecting Against Petition Fraud</u>.**

Defendants point to a single instance back in 2006 in which fraud occurred in Montana.  Def. Brief at pp. 16-25.   This single instance is not the kind of "history" that some courts have discussed as perhaps permitting a residency requirement.  In fact, Defendants' own expert witness, CB Pearson, admitted that there is no evidence of petition fraud, by anyone, in the candidate petition arena where nonresidents have freely circulated election petitions for candidates.  *See*, CB Pearson Dep. at 188:19-190:2.  Defendants' expert witness further admits that the 2006 petition fraud is the only case of petition fraud in Montana. *See*, CB Pearson Dep. at 189:9-190:2.  Plaintiff Ferrell circulated candidate petitions in Montana for Newt Gingrich's presidential campaign in 2012, all without incident. *See*, Ferrell Dep. at 11:4-12:11.  Consistent with CB Pearson's testimony, Defendants have failed to produce a single allegation of petition fraud in Montana either before or after the 2006 incident..

If the residency requirement and the compensation ban are directed at preventing petition fraud, why then, has there not bee petition fraud in the circulation of candidate petitions where nonresidents are free to circulate petitions in Montana and candidates are free to compensate their circulators based on the number of signatures collected.  The answer is that the petition fraud incident in

2006 was an outlier and that petition fraud is rare and properly dealt with through criminal prosecution when it occurs.  No court has ever sanctioned a residency requirement based on a single instance of alleged petition fraud – otherwise every state residency requirement that has been stuck down would have been constitutional. In fact, Oklahoma's residency ban was held unconstitutional by the Tenth Circuit Court of Appeals in *Yes on Term Limits, nc. v. Savage*, 550 F.3d 1023 (10th Cir. 2008), despite what the Oklahoma Supreme Court termed the "involvement of out-of-state circulators in the signature gathering process establishing a pervasive pattern of wrongdoing and fraud."  Def. Brief at p. 21, *In re Initiative Petition No. 379*, 155 P.3d 32, ¶3 (Okla. 2006).

And it is because that Montana has such a sparse history of petition fraud that Defendants are desperate to cast aspersion on Plaintiffs for any slight and unfounded allegation that has ever been made about them (and even then they are very few) as evidence of the continued specter of the out-of-state boogie-man ready to con quivering Montanans unable to read and understand a petition that they are asked to sign – pure legal nonsense.  Defendants' briefing on this point is nearly hysterical.

For instance, Defendants craft Hurst's description of the ability of Plaintiff Ferrell to communicate and quickly get the signer to stop what they are doing and get them to quickly concentrate on the issues that the petitions seek to place on the

ballot as a hypnotic state as some sort of nefarious evil, cannot be taken seriously by the Court.  Def. Brief at p.20.  Are Defendants really suggesting that Hurst testified that Plaintiff Ferrell actually cast a spell on petition signers such that Montana's residency requirement and compensation ban should survive strict scrutiny review?  This is briefing of a desperate sort that cannot be credited in a serious opinion issued by this Court.  At no time has it ever been alleged that Plaintiff Ferrell has not permitted the signer of a petition to read the petition, unlike the events in 2006, where the fraudulent circulator told signers they had to sign multiple petitions pages just to get the one issue on the ballot.  Even the single instance of an allegation lodged about Plaintiff Ferrell, where Plaintiff Ferrell was not afforded the opportunity to respond to the allegations, and in the hyper-partisan allegations made by Democrats in Wisconsin trying to save their legislators from the successful recall petitions filed against them for their conduct in blocking union reform, no allegation was made that Plaintiff Ferrell did not allow a petition signer to read the petition that they signed.  Even in Wisconsin where the Democrats deployed every effort available to them to get Plaintiff Ferrell's petitions invalidated, her signatures were adjudged to be over 91% valid.  *See*, Pl. Response to Def. Statement of Facts, ¶ 84; Pl. Exhibit N (only 240 signatures invalided of the 2,790 signatures filed by Plaintiff Ferrell in the Wisconsin recall petitions).

Accordingly, Defendants' characterization of legitimate political speech as "not far removed from the bait-and-switch tactics that were widespread in 2006" is pure sophistry and itself a manifestation of Defendants' own willingness to ignore First Amendment freedoms that cannot be given credit by this Court. The First Amendment permits circulators to circulate multiple petitions on multiple issues at the same time. What is not permitted under the First Amendment is telling a prospective petition signer to sign multiple petition pages and not affording them the opportunity to read the petitions they are asked to sign – that is what happened in 2006 in Montana, and that is not what Hurst is describing in his testimony with respect to the efficiency exhibited by Plaintiff Ferrell in conducting her efforts. Because the 2006 fraud involved stacking petitions so that the signers could not read the petition they signed, Defendants attempt to cast legitimate First Amendment speech in circulating multiple petitions at once and allowing each signer to read each petition they are asked to sign to be nefarious and a reason to maintain further impairment to core political speech in the form of the challenged residency requirement and compensation ban. Again, this Court cannot sanction Montana's novel effort to limit circulators to one petition issue at a time and then uphold the challenged residency requirement and compensation ban for fear that nonresident circulators will exercise the right guaranteed under the First Amendment and strict scrutiny analysis. Stacking petition (i.e. carrying and

advocating more than one petition issues at a time is not unlawful) fraud in getting the signature is unlawful and not remedied by the challenged statutes.

Defendants' citation to the *Norris* Court holding that the initiative process is a legislative power and the right to self-government does not stand for the proposition that Montana may ignore application of First and Fourteenth Amendment protections afforded to every citizen of the United States. Furthermore, nonresident petition circulators do not disturb the self-government of Montana, because at the end of the day, the only operative signature that counts toward securing ballot access for an initiative is the valid signatures of Montana residents and voters, and ultimately an initiative only passes upon a majority vote of Montana voters.

Let us all remember, a petition circulator is limited to the function of holding a clipboard and pen and offering Montanans the opportunity to decide for themselves if they want to place an issue on the ballot for all Montanans to vote to approve or reject at the general election.  They are not a hostile invading force holding Montanans hostage until they sign the petitions as ransom.

For all the foregoing reasons, every court to consider residency requirements to circulate petitions have found that a nonresident petitioner's willingness to accept the jurisdiction of the State for any investigation and prosecution of allegations of petition fraud is a more narrow method to protect a state's legitimate

interest in protecting the election process. Plaintiffs' would even add that Montana, like other states, can require resident and nonresident petition circulators to register and provide proof of identity and residence to ensure that Montana has a clear record on those circulating petitions in Montana. What is not permissible under strict scrutiny review are the blanket bans on nonresident circulators or and per-signature compensation absent specific evidence that they are narrowly tailored.

> **3.      Defendants Offer No Evidence that the Challenged Residency Requirement and Compensation Ban Protect Against Petition Fraud.**

Defendants make no effort to provide any evidence to show how the challenged residency requirement and compensation ban protect against fraud. If the challenged bans are necessary to prevent fraud, Defendants fail to explain why there has been no fraud in the circulation of candidate petition which continue to permit nonresident circulators and compensation based on the number of signatures collected. Defendants offer no explanation as to why there was no fraud in the circulation of initiative and referendum petitions prior to the 2006 incident when nonresidents were permitted to freely circulate petitions and receive compensation based on the number of signatures collected.

## III.    CONCLUSION

For all the forging stated reasons, strict scrutiny analysis should be applied to the challenged residency requirement and ban on per-signature compensation for initiative petition circulators in Montana.  Furthermore, Defendants have failed to demonstrate that the challenged restrictions protect the asserted interests of Montana nor that they are narrowly tailored to advance the state's compelling interest in protecting Montana's elections from petition fraud.

Accordingly, Defendants' Motion for Summary Judgment should be denied with respect to claims I, II, III and IV of Plaintiffs' Amended Complaint. Furthermore, Plaintiffs are content to litigate their claims against the challenged statutes based on their violation of the First and Fourteenth Amendments. Accordingly, Plaintiffs abandon claims V, VI and VII of their Amended Complaint.

Respectfully submitted,

Dated:  November 4, 2019                 __/s/ Paul A. Rossi_____
                                          Paul A. Rossi
                                          *Counsel for Plaintiffs*
                                          IMPG Advocates, Inc.
                                          316 Hill Street
                                          Mountville, PA  17554
                                          717.681.8344
                                          Paul-Rossi@comcast.net

## **CERTIFICATE OF SERVICE**

Plaintiffs, by and through their undersigned legal counsel, hereby certify that on this date, they have caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court for the United States District Court for the District of Montana by using the Court's CM/ECF system.

I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished through the CM/ECF system.

Dated:  November 4, 2019                    s/ Paul A. Rossi_____
                                            Paul A. Rossi
                                            *Counsel to Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 7.1(d)(2)(E)</u>

Pursuant to Rule 7.1(d)(2)(E) of the Local Rules of Civil Procedure, Plaintiffs, by and through their undersigned legal counsel, hereby certifies that the body of the foregoing brief, contains 5,440 words, as determined by the word count function of Microsoft Word software used to prepare this document.

Dated:  November 4, 2019                  <u>s/ Paul A. Rossi_____</u>
                                          Paul A. Rossi
                                          *Counsel to Plaintiffs*