GALLUS LAW
Chris J. Gallus
1423 Otter Road
Helena, MT  5962-7641
Phone:  406.459.8676
Fax:  406.443.0262
Chrisjgalluslaw@gmail.com

IMPG ADVOCATES, INC.
Paul A. Rossi
316 Hill Street
Mountville, PA  17554
717.961.8978
Paul-Rossi@comcast.net

*Counsel for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| **NATHAN PIERCE; MONTANA COALITION FOR RIGHTS; MONTANANS FOR CITIZEN VOTING; LIBERTY INITIATIVE FUND; and, SHERRI FERRELL** : | |
| : | **CIVIL ACTION** |
| **Plaintiffs,** : | |
| : | **6:18-cv-00063-CCL** |
| v. : | **Judge Charles C. Lovell** |
| : | |
| **COREY STAPLETON, in his official capacity as the Secretary of State for the State of Montana; TIM FOX, in his official capacity as the Attorney General of Montana; and, JEFF MANGAN in his official capacity as the Commissioner of the Montana Commission on Political Practices,** : | **Memorandum of Law In Support of Plaintiffs' Motion to Amend or Correct Judgment** |
| : | *Filed Electronically* |
| **Defendants.** : | |

1

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND OR CORRECT JUDGMENT OF THE COURT

On December 4, 2020, this Court issued an opinion and order granting Defendants' motion for summary judgment and denying Plaintiffs' cross-motion for summary judgment. (Docs. #57 & 58). Plaintiffs respectfully request that this Court amend its judgment entered on December 4, 2020, and vacate the judgment and either deny Defendants' motion for summary judgment and grant Plaintiffs' motion for summary judgment or simply deny both motions and schedule a hearing for further proceedings based on the new evidence presented by Plaintiffs in the form of the First Declaration of Paul Jacobs demonstrating that Plaintiffs intent to circulate their citizen only referendum for the 2024 general election.

A Rule 59(e) motion should be granted when "there is…the need to correct a clear error or prevent manifest injustice." *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam). The major grounds justifying reconsideration are "an intervening change of controlling law, the availability of new evidence or the need to correct a clear error or prevent manifest injustice. *Virgin Atlantic Airways, Ltd., v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2nd Cir. 1992) , *cert denied* 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992); *Bordallo v. Reyes*, 763 F.2d 1098, 1102 (9th Cir. 1985) (quoting *Miller v. Transamerican Presss, Inc.*, 709 F.2d 524, 527 (1983);18 C. Wright, A. Miller E. Cooper, *Federal Practice Procedure*, § 4478 at 790.

Plaintiffs file the instant motion to permit the Court to reconsider its misreading of what constitutes a constitutional injury under the First Amendment. In sum, the Court granted Defendants' motion for summary judgment because it reasoned Plaintiffs did not try to secure ballot access for their initiative to demonstrate sufficient harm to support their claims that Montana's challenged bans on out-of-state petition circulators and compensation paid to petition circulators based on the number of signatures collected impaired Plaintiffs' rights under the First and Fourteenth Amendments. The Court's analysis is mistaken under clearly established precedent of the United States Supreme Court, the Ninth Circuit Court of Appeals, and every other federal appellate court.

The United States Supreme Court explained in *Meyer v. Grant*, 486 U.S. 414 (1988) that the right:

> "to employ other means to disseminate their ideas does not take their speech through petition circulators outside the bounds of First Amendment protection. Colorado's prohibition on paid circulators restricts access to the most effective, fundamental, and perhaps economical avenue of political discourse, direct one-on-one communication. That it leaves open 'more burdensome' avenues of communication, does not relieve its burden on First Amendment expression. (citing *FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238 (1986)….The First Amendment protects appellees' right not only to advocate their cause but also to select what they believe to be the most effective means for so doing."

*Meyer*, 486 U.S. at 424. In other word, Plaintiffs are injured because Montana prevents Plaintiffs to associate with the circulators of their choice. Launching a

petition drive in Montana without the professional circulators of their choice – even if successful – does not eliminate the harm to Plaintiffs' right to choose the "most effective means" to "advocate their cause." Accordingly, the Court's judgment is inconsistent with Supreme Court precedent and must be reversed.

In *LSO, Ltd. v. Stroh*, 205 F.3d 1146 (9th Cir. 2000), the Ninth Circuit Court of Appeals explained that:

> [W]hen the threatened enforcement effort implicates First Amendment rights, the inquiry tilts drastically toward a finding of standing. Thus when the State of Virginia passed a law banning the display of certain sexually-explicit material where juveniles could examine it, the Supreme Court found that booksellers had standing to object, even though the law had not yet been enforced. *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 386, 392-93 (1988) (stating "We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise. We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them. Further, the alleged danger of this statute is, in large measure , one of self-censorship; a harm that can ne realized even without actual prosecution. *Id*. at 393).
>
> Accordingly, we have noted that the tendency to find standing absent actual, impending enforcement against the plaintiff is stronger "in First Amendment cases, '[f]or free expression – of transcendent value to all society, and not merely to those exercising their rights – might be the loser." *Bland v. Fessler*, 88 F.3d 729, 736-37 (9th Cir. 1996) (quoting *Dombrowski v. Pfister,,* 380 U.S. 479, 486 (1965)). *Accord Navegar, Inc. v. United States*, 103 F.3d 994, 999 (D.C.Cir. 1997) ("Federal courts most frequently find preenforcement challenges justiciable when the challenged statutes allegedly 'chill' conduct protected by the First Amendment.")….Indeed, LSO has already engaged in self-censorship . It indicated in its pleadings that is canceled plans to show some of the art from the 1997 exhibition

elsewhere in California because of the Officials' posture regarding [the challenged statute].

*LSO, Ltd*. 205 F.3d at 1155-56. In the instant action, Plaintiff engaged in self-censorship in abandoning the 2018 and 2020 intended petition drives because of Defendants' threatened enforcement of the challenged statutes if they used out-of-state petition circulators and/or paid them on a per-signature basis, and Plaintiffs determined that compliance with the challenged statutes would prevent the collection of the required number of signatures to secure ballot access, resulting in the wasted expenditure of hundreds-of-thousands of dollars. *See* Jacob Declaration ¶ 2. Plaintiff do not have to submit to Montana's unconstitutional scheme (as already determined with respect to the ban on out-of-state petition circulators by the Ninth Circuit in *Nader v. Brewer*, 531 F.3d 1028 (2008)) to establish harm. As the Ninth Circuit has already established, the ban on out-of-state circulators violates the First Amendment when a requirement for the petition circulator to submit to the jurisdiction of the state is a more narrow means to protect the state's interest in policing violation of a state's election laws, Plaintiffs need not submit to a condition which is unconstitutional in this circuit to demonstrate an injury. Nor, must Plaintiffs spend hundreds-of-thousands of dollars to launch a petition drive that Plaintiffs have deemed likely to fail without the use of professional out-of-state circulators of their choosing or the ability to recruit these circulators by paying them based on the number of signatures collected.

In *Daien v. Ysursa*, 711 F.Supp. 2d 1215 (D. Idaho 2010), the plaintiff was judged to have standing, and therefore a concrete cognizable constitutional injury, to challenge Idaho's ban on out-of-state petition circulators upon a mere intent to circulate petitions in Idaho for an independent presidential candidate even though no such independent presidential candidate had yet been identified. The Court explained that:

> "[W]hen plaintiffs seek to establish standing to challenge a law or regulation that is not presently being enforced against them, they must demonstrate 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Daien*, 711 F.Supp 2d at 1223; citing *LSO, Ltd*, 205 F.3d at 1154 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297 (1979)). This may be established by a variety of factors, including "the likelihood that the complainant will disobey the law, the certainty that such disobedience will take a particular form, any present injury occasioned by the threat of prosecution, and the likelihood that a prosecution will actually ensure….As the Ninth Circuit has more recently described, [I]t is sufficient for standing purposes that the plaintiff intends to engage in 'a course of conduct arguably affected with a constitutional interest' and that there is a credible threat that the challenged provision will be invoked against the plaintiff." *LSO Ltd.*, 205 F.3d at 1154-55 (quoting *Farm Workers*, 442 U.S. at 298. Other courts specifically examining a claimant's stated desire to engage in a course of conduct with a constitutional interest find standing where there is proof that the plaintiff: (1) has engaged in the type of speech affected by the challenged government action; (2) indicates a desire to engage in such speech in the future; and (3) has made a plausible claim that he will not do so because of a credible threat that the challenged regulation will be enforced. *See Marijuana Policy Project v. Miller*, 578 F.Supp. 2d 1290, 1301 (D. Nev. 2008); *Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006)(en banc).

*Daien*, 711 F.Supp. 2d at 1223.  Plaintiff Liberty Initiative Fund has clearly engaged in the exact type of speech at issue in this action – sponsoring and circulating initiative and referendum petitions with out-of-state petition circulators, and doing so on the same issue, supporting a referendum to ban non-citizen voting in North Dakota, Alabama, Colorado, Florida and Maine.  *See*, Jacob Declaration ¶4.  In is uncontested that Plaintiff Sherri Ferrell has circulated hundreds of ballot access petitions across the United States, including the State of Montana.  Plaintiff Liberty Initiative Fund has expressed a present intent to launch a petition drive in Montana in the future in 2024 "to place the citizen only voting initiative on the 2024 Montana ballot, when voter interest will be increased due to the presidential election and fight to replace Jon Tester in the United States Senate with the nominee of the Republican Party, and at a time which Plaintiffs are confident that this litigation will have concluded with a positive outcome such that the bans…will have been declared unconstitutional and permanently enjoined."  *See*, Jacob Declaration ¶3.  And, clearly, there is no indication that the challenged bans will not be enforced by Defendants.

In *De La Fuente v. Padilla*, 930 F.3d 110 (9th Cir. 2019), plaintiff De La Fuente was judge by the Ninth Circuit to have standing to challenge the number of signatures required to secure ballot access as an independent presidential candidate in California even though he refused to circulate any petitions in California in

2018,[1] for precisely the same reason that Plaintiffs in this action refused to circulate petition after this Court took no positive action on Plaintiffs' motion for a TRO/preliminary injunction – futility; and did not have the opportunity to do so for the 2020 election cycle because it had not yet occurred, as Plaintiff Liberty Initiative Fund has not have the opportunity to do so for the 2024 election cycle. The Ninth Circuit explained:

> The "injury in fact" inquiry focuses on "whether the party invoking jurisdiction had the requisite stake in the outcome," although the injury "need not be actualized." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). De La Fuente has suffered a concrete injury that is not merely speculative. De La Fuente's declaration confirms that he is running for President of the United States in 2020. Whether he will run as an independent or in a major political party's primary, as the Secretary argues, does not affect his injury. Either path is all but certain to lead De La Fuente running as an independent in the general election. As many well-known and not so well-known candidates know, running in a party's presidential primary is no guarantee of running as that party's general election candidate. De La Fuente's experience in 2016 reflects this reality. After De La Fuente ran (and lost) in the Democratic primary election, the only way he could appear on California's presidential general election ballot was to run as an independent. It is likely that if De La Fuente runs in the 2020 Democratic primary, history will repeat itself. Whichever path De La Fuente chooses, he will suffer an "injury in fact." He therefore has standing.

*De La Fuente*, 930 F.3d at 1104-05. Plaintiffs in this action took the same action in 2018 and 2020, refused to submit to the futility of a petition drive under the

---

[1] Plaintiffs' counsel represented De La Fuente in his action and represents to this Court that De La Fuente refused to circulate any petitions in California to secure access to the 2016 California presidential election ballot as an independent because it was cost prohibitive.

challenged bans, as De La Fuente took in refusing to circulate petitions because of the prohibitive costs resulting from the ballot access laws he sought to challenge. Furthermore, Plaintiff Liberty Initiative Fund is in the same position for the intended 2024 Montana petition drive as De La Fuente was in 2019 for his intended 2020 petition drive for ballot access. If the Ninth Circuit recognized an injury in fact for De La Fuente in both 2016 and 2020, then this Court must accept that, at least for Plaintiff Liberty Initiative, an injury in fact is established such that adjudication on the merits must be granted.

In *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000) the Seventh Circuit held a candidate who challenged an out-of-state circulator ban had standing to sue even though he secured ballot access despite the challenged ban. *Krislov*, 226 F.3d at 857-58. The Seventh Circuit explained: "Here, while the candidate were able to obtain enough signatures to appear on the ballot, they were injured in several different ways. By being denied use of non-registered, non-resident solicitors, they…were deprived of the solicitors (political advocates) of their choice. This in itself can be an injury to First Amendment rights." *Krislov*, 226 F.3d at 857 (citing, *Meyer*, 486 U.S. at 424).
So, what is the point of the Court instance on Plaintiffs first exposing themselves to Montana's unconstitutional petition requirements? If they do not get on the ballot they show injury, but if they do get on the ballot, they still show injury in not being

able to use the out-of-state petition circulators of their choice. Accordingly, the Court's formulation of injury analysis makes no substantive difference if, as under *Krislov*, getting on the ballot under the challenged bans impose injury the same as if you don't get on the ballot – what is the necessity to launch a petition drive to demonstrating an injury you are guaranteed to establish? Either this Court's judgment is wrong and must be revered or *Meyer, LSO Ltd., Daien, De La Fuente,* and *Krislov* were wrongly decided with respect to injury analysis.

Once injury for standing is established, no other injury analysis is appropriate as the severity of the harm is the reduced pool of available circulators triggering strict scrutiny analysis, and there of no evidence in the record to support constitutionality showing the bans are narrowly tailored to advance the state's compelling governmental interest.

Furthermore, the Jacob's Declaration is new evidence as to Plaintiffs' intentions for 2024 which independently supports the instant motion.

Accordingly, the judgment of the Court should be amended and the Order of the Court granting Defendants' motion for summary judgment should be reversed.

Respectfully submitted,

Dated: January 4, 2021

__s/ Chris J. Gallus____  __s/ Paul A. Rossi____
Chris J. Gallus  Paul A. Rossi
*Attorney for Plaintiffs*  *Attorney for Plaintiffs*

| | |
|---|---|
| I.D. #4460 | Admission *Pro Hac Vice* |
| 1423 Otter Road | PA. I.D. #84947 |
| Helena, MT 59602-7641 | 316 Hill Street |
| 406.459.8676 | Mountville, PA  17554 |
| chrisgalluslaw@gmail.com | 717.961.8978 |
| | Paul-Rossi@comcast.net |

**CERTIFICATE OF SERVICE**

Plaintiff, by and through their undersigned legal counsel hereby certifies that a true and correct copy of the foregoing document was served on Defendants Stapleton and Fox on this day through the Court's ECF system.

Dated:  January 4, 2020          **s/ Paul A. Rossi**
                                  Paul A. Rossi
                                  *Attorney for Plaintiffs*